UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GEORGE LINDSLEY,   Case No.: 1:07cv78

    Plaintiff   Judge Michael R. Barrett

  v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

## ORDER

Before the Court is Magistrate Judge Black's March 4, 2008 Report and Recommendation (hereinafter "Report") (Doc. 10).  In the Report, Magistrate Judge Black recommends that the decision of the Commissioner be found to be supported by substantial evidence and should be affirmed.  Plaintiff filed Objections to the Magistrate's Report (Doc. 11).

This is a Social Security appeal brought pursuant to 42 U.S.C. §405(g).  At issue is whether the Administrative Law Judge ("ALJ") erred as a matter of law in his analysis and that his finding was not supported by substantial evidence on the record as a whole.

    I.    Objections

When objections are received to a magistrate judge's Report and Recommendation on a dispositive matter, the assigned district judge "shall make a de novo determination...of any portion of the magistrate judge's disposition to which specific written objection has been made...."  Fed. R. Civ. P. 72(b).  After review, the district judge "may accept, reject or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge

with instructions." *Id; see also* 28 U.S.C. 636(b)(1)(B). General objections are insufficient to preserve any issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object. In the instant matter, Plaintiff objected to one specific issue which is also the same as Plaintiff's statement of specific errors (See. Doc. 11, p4; Doc. 5 p1). Plaintiff alleges that "[t]he decision of the ALJ and the Commissioner dated February 27, 2006 is not supported by substantial evidence on the record as a whole and is contrary to law in that the step 5 determination made in reliance upon testimony by a vocational expert that a person with Plaintiff's RFC[1] would be able to perform the job of 'light unskilled production inspector' (270,000 nationally and 2300 locally) less 10% for cleaner air was made in violation of SSR [Social Security Ruling] 00-4p and does not form a legal basis for denial of benefits." Plaintiff did not object to the statement of facts, standard of review and applicable law as set forth by Magistrate Judge Black.

II.  Background Facts and Procedural History

On February 15, 2001, plaintiff filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of October 2, 1997, due to a fused right wrist, depression and bursitis (Administrative Transcript ("Tr.") 117-19, 142). Plaintiff later amended his onset date to June 2,

---

[1]Residual Functional Capacity (RFC) is an assessment of an individual's maximum ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling 96-8p (1996). A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Id.* The RFC assessment considers only medically determinable impairments and the corresponding functional limitation and restrictions. *Id.*

2

2000.  Plaintiff's claim was denied initially and on reconsideration. Thereafter, on June 16, 2003, the ALJ entered his decision finding plaintiff not disabled (Tr. 14-28).  The Appeals Council denied further review. Plaintiff then timely appealed. The parties' joint motion to remand was granted, and the matter was remanded for further proceedings to "further evaluate and clarify Plaintiff's residual functional capacity and the jobs cited by the vocational expert." (*See* Case No. 1:04-cv-266, Docs. 19-20.)  A remand hearing was held on December 14, 2005, at which plaintiff was represented by counsel (Tr. 382-416).  Vocational expert, Robert Breslin, also appeared and testified (Tr. 392-412).  On February 27, 2006, the ALJ entered his decision finding plaintiff not disabled (Tr. 354-361 ("ALJ's decision")).  That decision became Defendant's final determination upon denial of review by the Appeals Council on December 6, 2006 (Tr. 340-42).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

> 1. The claimant met the special earnings requirements of the Act on June 2, 2000, the amended date the claimant stated he became unable to work, and continued to meet them only through September 30, 2002.
>
> 2. The claimant has not engaged in substantial gainful activity since June 2, 2000.
>
> 3. Claimant has a right arm and wrist that are injured and status-post surgery, a low back, pelvis, and hip strain, a right shoulder strain, pulmonary disease, and depression and anxiety. These impairments are considered "severe."
>
> 4. These medically determinable severe impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

3

5. The claimant's allegations regarding his limitations are not totally credible.

6. The claimant has the residual functional capacity for a full range of work with the limitations set out in Exhibit B17E.

7. The claimant was a "younger individual" between the ages of 46-49 at all pertinent times herein, within his date last insured and he has a high school education.

8. The claimant's limitations do not prevent him from making a successful adjustment to work that exists in significant numbers in the economy. A finding of "not disabled" is therefore reached within the framework of Medical-Vocational Rule 202.21.

9. The claimant was not under a "disability" as defined by the Social Security Act, at any time through the date last insured of September 30, 2002 (20 CFR 404.1520(f)).

(Tr. 360).

In summary, based on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform the job of light unskilled production inspector (Tr. 359), and found that Plaintiff was not disabled (Tr. 359-360).

### III. Analysis

#### A. Standard of Review

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 USC § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In performing this review, the Court must consider the administrative record as a whole, *Kirk v. Secretary of Health & Human Servs.,* 667 F.2d 536 (6th Cir. 1981), but may consider only the evidence submitted to the final decision-maker, here the ALJ. *See Foster v. Halter,* 279 F.2d 348, 357

4

(6th Cir. 2001).  The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the court." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  This zone of choice includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).  Consequently, this Court should defer heavily to such findings by the ALJ.  See *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994).  If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky*, 35 F.3d at 1035 (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)).

        B.      <u>Determination of Disability</u>

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 CFR § 404.1505(a).  The issue of disability is determined through a five-step sequential process set forth at 20 CFR § 404.1520.  Step one requires determining whether the claimant is engaging in substantial gainful activity.  If not, the inquiry moves to step two, which determines whether the claimant's impairments, individually or in combination are "severe."  If a severe impairment is found, step three inquires as to whether the claimant's impairment meets or medically equals the requirements of any impairment in the Listing of Impairments at Appendix 1, Subpart P, Regulations No. 4, 20 CFR Part 404.  If

5

the claimant's impairment is not of listing-level severity, then step four requires inquiry into whether the claimant has the residual functional capacity (RFC) to perform past relevant work. *Id.* If the claimant shows that he cannot perform past relevant work because of impairments, the burden of proof shifts to the Social Security Administration in step five. The Administration must then identify other jobs existing in significant numbers in the national economy that the claimant can perform. If at any point it is determined that the claimant is or is not disabled, the inquiry stops. *Id.* For example, if the ALJ determines at step four that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 CFR § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past relevant work; the matter should be remanded for further consideration under step five. *See Wyatt v. Secretary of Health & Human Servs.*, 974 F.2d 680, 684 (6th Cir. 1992); *Lauer v. Bowen,* 818 F.2d 636, 641 (7th Cir. 1987). The claimant bears the ultimate burden of proof by sufficient evidence that he is entitled to disability benefits, 20 CFR § 404.1512(a), meaning, that he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. See 42 U.S.C. §423(d)(1)(A).

Plaintiff challenges the ALJ's analysis under step five and argues that the Commissioner failed to meet his burden.

### C. Vocational Expert

To make a finding that there is work available in the economy that the claimant can perform, the ALJ must make a finding "supported by substantial

evidence that claimant has the vocational qualifications to perform specific jobs." *Varley v. Secretary,* 820 F.2d 777, 779 (6th Cir.1987).  Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the hypothetical question accurately portrayed the claimant's individual physical and mental impairments.  In that regard, the ALJ is not required to mirror a medical report to a vocational expert in order to accurately state a claimant's relevant impairments.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  In the present case, it is clear from the record that the ALJ asked proper hypothetical questions to the vocational expert (Tr. 392-393).

The vocational expert testified that based upon the assessment of Plaintiff's abilities there would be production-related jobs that Plaintiff could do. (Tr. 393).  Mr. Breslin further testified that:

> production inspectors, at the unskilled level, would typically inspect in a standing posture sometimes at a production line that moves or sometimes at a table or in some sort of a cell, they'd be inspecting products and packaging, visualizing inspecting products and packaging, not normally doing any precision measurement because those jobs are more skilled and aren't reflected in the numbers that I gave. So they're typically visual inspection jobs of products or subassemblies weighing less than 20 pounds. And the number of products would be, you know, virtually anything that comes off a production line is visually inspected.

(Tr. 396).

The vocational expert, upon request of the ALJ, then testified that he had personally watched light, unskilled production inspectors at work (Tr. 397) and that there is no discrepancy between his opinions and the Dictionary of Occupational Titles ("DOT") standards (Id.).  Based upon this testimony the ALJ

7

made no further inquiries regarding the DOT standards.  The ALJ found that Plaintiff can perform the light unskilled occupation production inspector (Tr. 359).

SSR 00-4p provides that the ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the vocational experts and information in the DOT and explain how any conflict that has been identified was resolved.  In the present matter, the vocational expert did not identify any conflicts and, in fact, testified that there was no discrepancy between his opinions and the DOT standards.  Based upon this testimony, the ALJ found that the "job of production inspector is consistent with the Dictionary of Occupational Titles and contains no discrepancies" (Tr. 359).

Plaintiff argues that the ALJ's finding was in violation of SSR 00-4p such that the job description of production inspector is not contained in the DOT and is, therefore, a conflict that should have been identified and resolved by the ALJ (Doc. 11, p5; Doc. 5, p4).

Defendant argues that the ALJ did as was required by SSR 00-4p, in that he inquired into the existence of potential conflicts between the vocational expert's testimony and the DOT and was told there were none.  Furthermore, the Defendant argues that the ALJ is not limited to the DOT as there are many possible vocational resources.  Finally, Defendant's argue that there is no evidence of an actual conflict with the DOT as "the job classifications contained in the DOT, referred to as 'occupations,' are collective descriptions that can contain numerous jobs" (Doc. 8, p4-5 citing SSR 00-4p and SSR 96-9p). Defendants allege that while the job identified by the vocational expert may not

8

be an occupation described in the DOT it, nevertheless, conformed to a DOT occupational description (Doc. 8, p5).[2]

Plaintiff counters that the ALJ can not consider evidence that was not before him and that a more specific DOT occupation that may coincide with the job description of production inspector was not presented to the ALJ.  Further, the burden of proof at Step-Five is on the ALJ and Commission to show that jobs do exist in the national economy that Plaintiff can perform in spite of his impairments and that the Commissioner has failed to meet this burden.  See *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048 (6th Cir. 1983).  Additionally, Plaintiff points out that the vocational expert testified that in order to determine the number of jobs available in the national economy it is necessary to have the DOT numbers because the U.S. Census publication that determines the numbers of job relies on the DOT descriptions (Tr. 394-396). Taking this one step further, Plaintiff alleges that without the DOT numbers the vocational expert could not have been able to come up with number of jobs available that he did (270,000 nationally and 2,300 locally) further demonstrating the existence of an unexplained conflict.

---

[2]It was also argued by the Defendant that Plaintiff, through counsel, extensively crossed examined the vocational expert and should have asked the vocational expert specifically which DOT numbers apply.  However, the Court does not find merit in this argument as it is the affirmative duty of the ALJ to inquire about conflicts.  *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) *citing Rutherford v. Barnhart*, 399 F.3d 546, 557(3d Cir. 2005); *Hackett v. Barnhart*, 395 F.3d 1168, 1174-75 (10th Cir. 2005); *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002).   In the present case, the ALJ did inquire as to whether a conflict existed and the vocational expert testified that there was no conflict.  However, this Court finds that it is the duty of the ALJ to ensure that such testimony is correct.

9

Plaintiff concedes that an ALJ can rely upon the testimony of the vocational expert, even if it contradicts the DOT (Doc. 9, p2). *See Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995). Here, the ALJ did not consider any contradiction since the vocational expert testified that none existed. However, an ALJ is not bound by the DOT, *See Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995), and credibility issues are for the ALJ to determine, *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). It appears to this Court that SSR 004-p needs to be reconciled with SSR 96-9p. SSR 96-9p provides that "an 'occupation' refers to a grouping of numerous individual 'jobs' with similar duties. Within occupations (e.g., 'carpenter') there may be variations among jobs performed for different employers (e.g., 'rough carpenter')".

Here, the ALJ technically met the requirements of SSR 00-4p by asking the vocational expert if any discrepancies existed. The vocational expert testified that no discrepancies with the DOT existed and then also testified as to the description of the unskilled production inspector job (Tr. 396-397). Obviously, the ALJ's ruling would have been more clear had he asked the vocational expert which DOT listing was consistent with the job of unskilled production inspector job; however, that is not required. The vocational expert, whom the ALJ deemed credible, described a more general occupation, instead of one that was industry specific. As found by the Magistrate Judge, "the DOT reveals hundreds of inspector jobs, many of which comply with the plaintiff's RFC" (Doc. 10, p6), such as "Rag Inspector and/or Hat & Cap Inspector" (Doc. 10, p7). This Court agrees.

10

Therefore, the Court finds that the decision of the ALJ was substantially supported by the evidence and not a violation of SSR 00-4p..

    IV.    <u>Conclusion</u>

The Report and Recommendation is hereby ADOPTED (Doc. 10) and the ALJ's finding is AFFIRMED. The Clerk of Court is directed to terminate this matter from the docket of this Court.

**IT SO ORDERED.**

                                    s/Michael R. Barrett
                                    Michael R. Barrett, Judge
                                    United States District Court